4.    Liability for acts of agent of corporation can be based upon acts within express or apparent authority of agent; principal may be liable even if conduct was committed solely to advance agent's illegitimate scheme.

5. When dispute involves high corporate officer, apparent authority is proper basis for imposition of vicarious liability upon corporation. *Federal Sav.& Loan Ins. Corp. v. Shearson-American Express, Inc.,* 658 F.Supp. 1331, 1341-1342 (D.P.R. 1987).

112.    That Plaintiffs allege that  Defendants Lawrence E. Cunnick, Michael T. Ebaugh and Donald R. Rodgers  were each aware of the actions of the lower-rung associates, employees, directors, accountants, banking associates, and attorneys,  and each is vicariously  liable  as a *respondeat superior* for the actions of the Defendants during the course of their employment to conduct these criminal activities.

[White-collar crime [is] a term commonly used to designate those  occupational crimes committed in the course of their work by persons of high status and social repute [that] . . . are only rarely dealt with through the full force of criminal sanctions . . . Serious erosion of morals accompanies [the white collar offender's] violation. [Those who so] flout the law set an example for other businesses and influence individuals, particularly young people, to commit other kinds of crime on the ground that everybody is taking what he can get.  President's Commn. on Law Enforcement  and Administration of Justice, The  Challenge of Crime in a Free Society 33-34, (1967) note 154, at 47-48. Quoted in RICO In Business and Commercial Litigation, supra, §5.07.

113.    That Plaintiffs allege that the total lack of acknowledgment of the crimes being committed by Defendants when they continuously refused to address the issue of the billing statements for the dogs, threatened the Plaintiffs to destroy or sell the dogs, and  denotes the affirmative position of these Defendants toward the reckless negligence leading to the predicate acts of the pattern of racketeering activities.[35]

---

[35]    That the intent to defraud need only be shown from a "reckless indifference  for the truth." *United States v. Frick,* 588 F.2d 531, 536 (5th Cir.), cert denied, 441 U.S. 913 (1979). See also *United States v. Boyer,* 694 F.2d 58, 59-60 (3rd Cir. 1982); *United States v. Perkal,* 530 F.2d 604, 605 (4th Cir.), cert. Denied, 429 U.S. 821 (1976); *Kronfeld v. First Jersey Nat'l. Bank,* 638 F.Supp.1454 (D.N.J. 1986); *Louisiana Power & Light v. United Gas Pipe Line,* 642 F.Supp. 781, 803 (E.D. La. 1986) (**"knowing intent to defraud may be found when a Defendant deliberately proceeds with a reckless indifference**

That it is necessary to show that an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity. Once knowledge or reckless indifference at this high level has been determined, the court may then consider other factors, among them the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefited from the racketeering activity. *Gruber v. Prudential-Bache Secs., Inc.,* 679 F.Supp. 165, 181 (D.Conn. 1987).

114. That, therefore, the Defendant Lawrence E. Cunnick is the primary *respondeat superior* for these predicate and overt acts committed for the racketeering activities.

115. That mail fraud, in violation of Title 18 U.S.C.A. § 1341 (Frauds and swindles), was the main mode of transferring the information back and forth against the Plaintiffs and the evidence of its continuation is obvious from the number of times and the letters that were used for the conduct that the Defendants took over the course of approximately fifteen months.[36]

116. That Plaintiffs allege that the "lower-rung" participants in the enterprise are, and were, under the direction of the enterprise's key Defendant Lawrence E. Cunnick in the "operation" of the enterprises. All those who participated in the enterprises' operation by carrying out the directions given to them by Defendant Lawrence E. Cunnick are insiders in the enterprises pursuant to §1962(d),[37] and are not insulated from RICO liability. *MCM Partners,*

---

for the truth, making representations that are baseless, and shutting his eyes to their probable falsity."). As quoted from CIVIL RICO PRACTICE: CAUSES OF ACTION, by Harold Brown, Editor, (1991), pg. 21, n 20. (Emphasis added).

[36] "Conduct" is synonymous with "management" or "direction." Webster's Third New International Dictionary 473 (1961). The "conduct of [the enterprise's] affairs" thus connotes more than just some relationship to the enterprise's activity; the phrase refers to the guidance, management, direction or other exercise of control over the course of the enterprise's activities. In order to participate in the conduct of an enterprise's affairs, then, a person must participate, to some extent, in "running the show." *Yellow Bus Lines, Inc. v. Local Union 639,* 913 F.2d 948, 954 (DC Cir. 1990).

[37] As Judge Flaum noted in United States v. Neapolitan, 791 F.2d 489, 497 (7th Cir. 1986), "a conspiracy to violate RICO should not require anything beyond that required for a conspiracy to violate any other federal crime." *Schiffels v. Kemper Fin. Servs, Inc.,* 978 F.2d 344 (7th Cir. 1992).

*Inc. v Boscarino*, 1994-1 Trade Cas. (CCH) ¶ 70,547, at 71,958, 1994 WL 63163 (N.D.Ill. Feb. 17, 1994).[38]

## IX. VIOLATIONS OF AMENDMENT IV

117.   That Plaintiffs assert that civil RICO is the private citizen's means as a 'private attorney general' to obstruct the violation of Amendment IV of the Constitution of the United States and the laws enacted pursuant to that amendment. On June 7, 1956, Senator Thomas C. Hennings, Jr., (D Mo.), then chairman of the Senate Judiciary, Constitution Rights Subcommittee, met with President Dwight D. Eisenhower. President Eisenhower convinced the Senator that he intended *"to protect the individual against any unreasonable encroachment on his movements, speech and mind."*

118.   That if one enterprise has the ability to find a victim, abuse and manipulate a statute law, attempt to conduct threats of extortion, and then use this illegal power to defame and destroy the victim's credibility, (all of this without a Warrant or Oath or affirmation), then this conduct is a monopoly of the person, papers, property and effects of the *'actual'* Plaintiff victims. [39]

119.   That the Plaintiffs hereby assert that the misapplication, misrepresentation, and manipulation of the previous contracts are simply a diversion to sue for damages when the Defendants have already demanded fines at a rate usurious to the Federal or State laws, and at more than twice the enforceable rate in violation of Title 18 U.S.C.A. § 1961(6). These acts are

---

[38] "lower-rung participants . . . who are under the direction of upper management" may implement decisions as well as participate in the conduct of an enterprise. *United States v. Oreto*, 37 F.3d 739 (1st Cir 1994), cert. denied, 115 S.Ct. 1161, 130 L.Ed. 2d 1116 (1995). CIVIL RICO PRACTICE MANUAL, Second Edition, by Paul A. Baptista, Wiley Law Publications, John Wiley & Sons, Inc., (1997), pg. 81.

[39] CONGRESS AND THE NATION, 1945-1964, Security and Liberties, Crime 2, 1956, page 1672.

violations of the Plaintiffs' Constitutional rights pursuant to Amendment IV of the Constitution of the United States and Plaintiffs petition that this Honorable Court to issue penalties against the said Defendants for these violations.

## X.  AIDING AND ABETTING

120.    That Plaintiffs assert that  each individual Defendant aided and abetted the Defendant enterprises, persons, corporations, partnerships, entities, or associates in fact,  in the commission of the predicate acts for the pattern of  racketeering activities.

121.    That Plaintiffs  allege that the individual Defendants aided and abetted the Defendant enterprises in committing the predicate acts of the pattern of racketeering activities by directing and instructing said employees in their actions while knowing these directions to be felonious in violation of  Title 18 U.S.C. § 1962 (c).[40]

122.    That Plaintiffs further allege that the Defendant *respondeat superior*, Lawrence E. Cunnick  aided and abetted the other Defendants of the Defendant enterprises in the  commission

---

[40] [T]he statute does not define [the] connection by distinguishing between predicate acts which play a major role or a minor role, nor any role at all in what might be seen as the usual operation of the enterprise; nor does it require that such acts be in furtherance of the enterprise,  as defendants suggest it must.

  In this Court's view, the statute fails to state these requirements because Congress did not intend to require them in these terms. The perversion of legitimate business may take many forms. The goals of the enterprise may themselves be perverted. Or the legitimate goals may be continued as a front for unrelated criminal activity. Or the criminal activity may be pursued by some persons in direct conflict with the legitimate goals pursued by others. Or the criminal activity may, indeed, be utilized to further otherwise legitimate goals. No good reason suggests itself as to why Congress should want  to cover some, but not all of these forms; nor is there any good reason why this Court should construe the statute to do so. It plainly says that it places criminal responsibility on both those who conduct and those who participate, directly or indirectly, in the conduct of the affairs of the enterprise, without regard to what the enterprise was or was not about at the time in question. This may be broad, but it is not vague.  *United States v. Stofsk*, 409 F.Supp. 609 (SDNY 1973).

of their predicate acts of racketeering activities by providing the manpower to accomplish their goals. No Defendant questioned if the actions and policies undertaken by the Defendant enterprises were legal in regard to the damage to the Plaintiffs' lives, property, businesses, and personal integrity.[41]

123. That the Defendants are living off the proceeds for this standard of operation and thereby encouraging these patterns of racketeering activities in violation of Title 18 U.S.C. § 2 (b) and § 1962 (a) and (d).[42]

124. That under Title 18 U.S.C. § 1962 (d), the majority of the courts agree that a person associated with a Defendant in a RICO enterprise need not *herself* be personally or directly involved in the commission of the predicate acts as long as that person agrees to the commission of those predicate acts by another person, or benefits from the commission of those acts.

125. That the Defendants Michael T. Ebaugh and Donald R. Rodgers directly intended and actually joined and participated in the existing conspiracy of their clients and formed a new conspiracy and enterprise to promote the pattern of racketeering activities by adding new predicate and overt acts in a different manner which operates separately but for the benefit of the other enterprises in violation of Title 18 U.S.C.A. § 1962(a).

---

[41] "Association does not require that the defendant be employees by or legitimately connected to the racketeering enterprise." *United States v. Mokol,* 957 F.2d 1410, 1417 (7th Cir 1992).

[42] There are other unanswered questions presented by this case. Keating testified that he was so bent on doing the "right thing" that he surrounded himself with literally scores of accountants and lawyers to make sure all the transactions were legal. The questions that must be asked are:

Where were these professionals, a number of whom are now asserting their rights under the Fifth Amendment, when these clearly improper transactions were being consummated?

Why didn't any of them speak up or disassociate themselves from the transactions? Where also were the outside accountants and attorneys when these transactions were effectuated?

What is difficult to understand with all the professional talent involved (both accounting and legal), why at least one professional would not have blown the whistle to stop the overreaching that took place in this case. *Lincoln Savings & Loan Assn.v. Wall,* 743 F.Supp. 901, 919-20 (DDC 1990) (footnote omitted).

126.   That Plaintiffs allege that there are outside coconspirators who are essential elements of the crimes even  though they are not directly named in this suit, and may not be directly associated with the Defendants' enterprises but have contributed in the attempts to defraud the Plaintiffs.   These coconspirators can only be revealed through discovery process pursuant to F.R.Cv.P. Rule 26, and the Freedom of Information Act.

## XI.  RULE 26—GENERAL PROVISIONS GOVERNING DISCOVERY;
## DUTY OF DISCLOSURE

127.  That because of the damages that have accrued over the last fifteen months, and that are still accruing, and the planned attack against the Plaintiffs in order to attempt to extort more funds from the Plaintiffs, it is hereby requested the following pursuant to Rule 26(a) (Required Disclosures; Methods to Discover Additional Matter), to-wit:

1).  the names and addresses of Defendants' children, the names of their spouses and their children if they are married, and the addresses of the children;

2).  the names and addresses of any other relative that has lived with any of the Defendants in the last fifteen months;

3).  the name and address of any mortgage company, bank, or financial institution that holds a lien on the properties described as; a) ;

4).  the name and address of any mortgage company, bank, or financial institution that holds a lien on any property owned by any of the Defendant's children, or spouse of that child; and,

5). the name of each attorney, the name of his (her) firm, the names of all of the attorneys in the firm, the address of the firm, the name of each attorney's spouse, and each attorney's home address.

## XII.   UNETHICAL LEGAL PRACTICES AND AIDING AND ABETTING

128.   That Defendants Michael T. Ebaugh and Donald R. Rodgers are RICO *persons* who, through predicate and overt acts, have encouraged and gained controlled of the existing conspiratorial enterprises of the other Defendants, and are controlling and conducting the new enterprise(s) through patterns of racketeering activities to collect an unlawful debt in conspiracy with Defendants Lawrence E. Cunnick, Pamela Neidermair, THE COUNTRY KENNEL, INC., and BIOCON, INC., et al. These new conspiracies are formed through intended and actual overt acts for the new enterprises. The victims are the same Plaintiffs, but the scope and the range of pattern of racketeering activities is expanded and enlarged. Therefore, the continuity aspect of the pattern of racketeering activities is complete.

129.   That Attorneys for the Defendants have the right and even the obligation to "zealously defend" their clients, but to endeavor to join in the conspiracy to impede justice in order to achieve this goal is an abusive litigation practice and a violation of the laws as enacted by Congress.[43]

---

[43] *In re American Continental Corp/Lincoln Savings & Loan Securities Litigation,* three so-called "national" law firms- New York's Kaye, Scholer, Fierman, Hays & Handler; Chicago's Sidley & Austin; and Cleveland's Jones, Day Reavis & Pogue-paid settlements to defrauded investors totaling nearly $85 million in order to absolve themselves from their wrongdoing in a case which ultimately resulted in the second-largest civil jury verdict in American history.

In assessing the causes and impact of the continuing savings and loan crisis, careful attention must be paid to the roles played by professionals-especially attorneys and accountants- who willfully abandoned their professional ethics and joined the "chain of greed" which epitomized the thrifts' operations and eventual downfall.

As to "outsiders," the Supreme Court in Reves rejected the argument that its analysis meant that "outsiders"—such as accounting firms, law firms, and economic consultants—could never be held accountable under § 1962(c):

> Of course, "outsiders" may be liable under § 1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs—that is, participate in the operation or management of the enterprise itself. . . .[44]

130.   That Plaintiffs state that these acts to deny the Plaintiffs the right to have the billing statements submitted were actions akin to those cited in *Chisolm v. Charlie Falk Auto Wholesalers, Inc.*, 851 F.Supp. 730 (E.D.Va. 1994) where the defendants mailed a "Notice of Sale" which appeared to be a legal action but was actually part of a scam to sell cars upon which a default of one or more payments had occurred to enterprises which were in collusion with the loan company.

But the general standard that has emerged since *Reves*—that an attorney who has provided traditional legal services to a client ordinarily does not operate or manage the client and therefore cannot have RICO liability—should not, in the words of the Eighth Circuit in *Handeem*,

> Be mistaken for an absolute edict that an attorney who associates with an enterprise can never be liable under RICO. An attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments. Neither *Reves* nor RICO itself exempts professionals, as a class, from the law's proscriptions, and the fact that a defendant has the good fortune to possess the title "attorney at law" is, standing alone, completely irrelevant to the analysis dictated by the Supreme Court [in *Reves*].[45]

---

(See Harris, The S& L Looters Who May Get Away, Wall St J, Feb. 12, 1990, at A 12, col 3 (noting the essential roles played by lawyers who " 'papered' the bogus transactions by drawing up the contracts"); France, Savings & Loan Lawyers, 77 ABAJ 52 (May 1991) (observing that important roles were played by attorneys who aided and abetted- and sometimes instigated- thrift operators' criminal wrongdoing and bogus transactions).

As quoted in RICO In Business And Commercial Litigation by Kevin P. Roddy, §5.07 PROFESSIONAL LIABILITY § 1962: PROHIBITED CONDUCT, 5-3 0to 5-32.

[44] CIVIL RICO PRACTICE MANUAL, Second Edition, 2003 Cumulative Supplement by Paul Baptista,(2003) Aspen Publishers, page 42.

[45] *Handeem v. Lemaire*, 112 F.3d 1339, 134 (8th Cir. 1997), as quoted on page 62, CIVIL RICO PRACTICE MANUAL, Second Edition, 2003 Cumulative Supplement by Paul Baptista,(2003) Aspen Publishers.

131.  That at this point Defendant Michael T. Ebaugh and Donald R. Rodgers ceased zealously defending their clients, and, instead, joined their clients in a RICO conspiracy as coconspirators and formed a new enterprise which Defendants controlled in violation of Title 18 U.S.C.A. § 1962 (c) and (d).

> Agreeing to participate somehow in an enterprise is active; it is personal. In Salinas the Court noted a close identity between the enterprise itself and the conspiracy to run it. An agreement to join a conspiracy is highly personal; similarly, an agreement to participate in the conduct of an enterprise is also personal and active. But how one agrees to get the job done—through a pattern of racketeering activity—is not necessarily personal; it can be delegate. *Brouwer v. Raffensperger Hughes & Co.*, 199 F.3d 961 (7th Circuit 2000) at 965.

132.  That this direct attack against the Plaintiffs was orchestrated by the Defendants Michael T. Ebaugh and Donald R. Rodgers not to traditionally defend their clients, but to set the Plaintiffs up for a much larger scam for which the Defendants Ebaugh and Rodgers expected to be liberally compensated.

133.  That all of the Defendants knew that the health problems of the Plaintiffs were perilous, and said Defendants plotted to take advantage of this situation by thinking that the Plaintiffs could not and would not react quickly enough to file a dispute. But when lives and livelihoods are threatened then anything is possible even if the Plaintiffs knew that the physical and mental stress caused by the adversaries' actions would increase the Plaintiffs' pain and suffering. **The aftermath of this assault by the Defendants is staggering to the Plaintiffs and the damages and injuries are irreparable and insufferable because it severely affected their business through the destruction of their family pets.**

134.  That Plaintiffs aver that Defendants Michael T. Ebaugh and Donald R. Rodgers took control of a RICO enterprise in violation of Title 18 U.S.C.A. § 1962(b) and conducted the

execution of a predicate act of extortion through threat of violence and extortion in violation of

Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence).

135. That the Defendant Michael T. Ebaugh and Donald R. Rodgers in a clear violation

of Title 18 U.S.C.A. § 1962(c) have become auxillary *respondeats superior* by taking the

controlling lead in the pattern of racketeering activities:

> To conspire to commit a subsection (c) offense, one would not need, necessarily, to meet the *Reves* requirements: one does not need to agree personally to be an operator or manager. On the other hand, one cannot conspire to violate subsection (c) by agreeing that somehow an enterprise should be operated or managed by someone. That would impose a meaningless requirement and cast a frighteningly wide net. Rather, one's agreement must be to knowingly facilitate the activities of the managers or operators to whom subsection (c) applies. One must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner. It is an agreement not to operate or manage the enterprise, but personally to facilitate the activities of those who do. *Brouwer v. Raffensperger Hughes & Co., Id.* at 967.

## XIII.   VIOLATIONS OF AMENDMENT IX: A FEDERAL QUESTION

136. That this Complaint breaks the rules of objective pleading because it is written with

emotion due to the criminal acts which have been perpetrated to strike at the core of the family

unit and threaten death to the members of the family. The kidnapping, ransom demands, and

threat of the murder of the dogs is a conspiracy to attempt the murder of the Plaintiffs.

137. That this disruption and turmoil against the Plaintiffs violates the sanctity of the

spirit of this republican form of Government upon which this country was founded. The violation

of these rights has affected the health and security of these Plaintiffs and their family, and there

rights are superior to any inanimate subject at law.

138.    That the laws which the State of Maryland has enacted to seize the Plaintiffs'

property illegally is abhorrent to Amendments IV, V, VIII, IX, XIII, and XIV.In *Calder v. Bull*, 3

U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), Justice Chase stated in the opinion:

> There are acts which the federal, or state, legislature cannot do, without exceeding their authority. There are certain vital principles in our free republican governments, which will determine and overrule an apparent and flagrant abuse of legislative power; as to authorize manifest injustice by positive law; to take away that security for personal liberty, or private property, for the protection whereof the government was established. An act of the legislature (for I cannot call it a law), contrary to the great first principles of the social compact, cannot be considered a rightful exercise of legislative authority. The obligation of a law in governments established on express compact, and on republican principles, must be determined by the nature of the power on which it is founded. A law that punished a citizen for an innocent action or, in other words, for an act, which when done, was in violation of no existing law; a law that destroys, or impairs, the lawful private contracts of citizens; a law that makes a man a judge in his own cause; or a law that takes property from A and gives it to B: It is against all reason and justice, for a people to intrust a legislature with SUCH powers; and therefore, it cannot be presumed that they have done it. The genius, the nature, and the spirit, of our State governments, amount to a prohibition of such acts of legislation; and the general principles of law and reason forbid them. {To} maintain that our Federal, or State legislature possesses such powers, if they had not been expressly restrained, would, in my opinion, be a political heresy, altogether inadmissible in our free republican governments.

139.    That the law to own domesticated animals and keep them as pets transcends even

Amendment IX, or, as Lord Coke stated in *Dr. Bonham's Case*, 8 Co. 113b, 118a, 77 Eng.Rep.

646, 652 (1610):

> "And it appears in our books, that in many cases, the common law will controul Acts of Parliament, and sometimes adjudge them to be utterly void:  for when an Act of Parliament is against common right, and reason, or repugnant, or impossible to be performed, the common law will controul it, and adjudge such Act to be void."

140.    That the States' limitation on the rights of the individual is controlled by Article I,

Sections 9 and 10, [46] which gesticulated the beginning of the invasion on the contract clause as a

protector of property rights, and made it clear that, to protect property rights from abusive state

---

[46] *Charles River Bridge v. Warren Bridge*, 36 U.S. (11Pet.) 420, 9 L.Ed. 773 (1837).

legislation, this clause must be relied upon in conjunction with any other provisions to protect the Citizen's Federal Constitutional property rights.

141.  That the Plaintiffs assert that when they bought the dogs, or the parents of the dogs, they entered into a contract to buy the dogs, and that contract is paramount over any other contract that might be entered into which affect the dogs. It would be similar to a first mortgage on a property. All other lien holders take secondary, tertiary, etc., positions until that first lien is satisfied.

142.  That it is the right of the Plaintiffs, as the owners of the animals to decide on medical treatment and whether identification tags are to be injected into the animals. The Plaintiffs paid for the animals' shots and inoculations only 23 days before the Defendants announced the kidnapping and sent the ransom note on December 6, 2005; therefore, there was no abandonment. No one pays for the dogs' shots and then abandons them 23 days later.

143.  **PLAINTIFFS HAVE NEVER ABANDONED THEIR CONTRACTUAL RIGHTS TO THESE ANIMALS. The defendants kidnapped the animals and then sent a ransom note on December 6, 2005, and sent a follow-up letter on January 5, 2005.**

144.  That, therefore, these contracts for the purchase of the dogs and the payment for the dogs' medical care are superior to any claims made by the Defendants which they present to support the criminal acts they have committed pursuant to the kidnapping, theft, extortion, and ransom. Needless to say, a report has been made to the Federal Bureau of Investigation.

145.  That the Defendants have not obtained a judgment from a court of law to support their claim that the dogs are their "property" pursuant to Amendment V or Amendment XIV of the Constitution of the United States.

Professor Corwin summarized in *Liberty Against Government*, 173-74.

*Most State constitutions contained from the outset a paraphrase of chapter 29 of Magna Carta which declared that no person should be deprived of his 'estate' 'except by the law of the land or a judgment of his peers'; and following the usage of the Fifth Amendment of the United States Constitution, more and more State constitutions came after 1791 to contain a clause which, paraphrasing a statue of Plantagenet times, declared that 'no person shall be deprived of life, liberty or property without due process of law.' By the outbreak of the Civil War a more or less complete transference of the doctrine of vested rights and most of its Kentian corollaries had been effected in the vast majority of the State jurisdictions.*

*One exception was Kent's distinction between the power of 'regulation,' which he conceded the State, and that of 'destruction,' which he denied it unless it was prepared to compensate disadvantaged owners. The division of judicial opinion on this point was signalized in the middle fifties, when the New York Court of Appeals, in the great Wynehamer case, stigmatized a State-wide prohibition statute as an act of destruction in its application to existing stocks of liquor, which was beyond the power of the State legislature to authorize even by the procedures of due process of law.* [47]

146.   That the Defendants nullified any contractual rights they might have had when they failed to follow the Federal laws pertaining to the Consumer Credit Protection Acts and the Fair Credit and Billing Act. The violation of one section of Title 15 U.S.C.A. § 1692 Civil Liability, negates the Defendants' rights to claim any financial benefits for .

## XIV. EXTORTIONATE EXTENSIONS OF CREDIT

147.   That the Plaintiffs state that the Defendants, THE COUNTRY KENNEL, INC., et al, conspired to make extortionate extensions of credit pursuant to Title 18 U.S.C.A. § 892 (Making extortionate extensions of credit) and support this allegation pursuant to the following sections:

(b)(1). If the Defendants had an enforceable means to collect the debt through "civil judicial process against the debtor" within any jurisdiction they would have submitted the proper documents to the Plaintiffs pursuant to the Fair Credit and Billing Act and filed the appropriate

---

[47] *Liberty Against Government* 89-115 (1948; Corwin, *The Doctrine of Due Process of Law Before the Civil War*, 24 Harv.L.Rev. 366, 460 (1911) Professor Corwin summarized in *Liberty Against Government* 173-74.

claim. The Defendants conspired to never mail the appropriate statements because the Defendants had no intention to legally pursue the debt.

(2) The Plaintiffs aver that there is a violation of the usury laws hidden in the denial and failure to produce legitimate records and billing statements. Why else would a creditor not submit a billing statement to a debtor to collect a debt? Plaintiffs aver that there was an attempt through a conspiracy to collect an 'unlawful debt' and since there was no records or justification ever sent to the Plaintiffs, their claims for payment is at a rate usurious which is at least twice the enforceable rate in violation of Title 18 U.S.C.A. § 1961(6) pursuant to Title 18 U.S.C.A. § 1962(a)[48] and (d) (Prohibited activities).

(3) The Defendants have sent three letters whereby the evidentiary support for what has happened to them and their property, but they have no verification that this is the modus operandi for all of the Defendants' transactions. **The Plaintiffs assert that this specific threat of repetition extends indefinitely into the future, and thus, the requisite threat of continuity is supplied.**

(4) Plaintiffs will demand that all of the records for bill collection be produced pursuant to Rule 26 of the Federal Rules of Civil Procedure for all of the Defendants including Defendants Michael T. Ebaugh and Donald R. Rodgers to determine if this is the way that every person of their organization, partnership, corporation, or entity operates to collect debts. Client privileges will not operate to disadvantage the Plaintiffs in the production of these documents.

---

[48] § 1964(a): The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; *or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.* (Emphasis added).

148. That, therefore, the Plaintiffs have the right to claim relief pursuant to Title 18 U.S.C.A. § 1964(c) (Civil remedies) because this case involves high level first tier mail fraud in violation of Title 18 U.S.C.A. § 1341 (Frauds and swindles).

## XV.  RICO ACTS

149. That Defendants directly or indirectly affected the interstate and foreign commerce which controls the fate of the Plaintiffs' credibility to do business. These felonious acts of threats of extortion have  affected the Plaintiffs' ability to conduct business due to fear and severe emotional distress, and, therefore, have irreparably damaged the Plaintiffs and the Plaintiffs' business  in this country pursuant to Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence).

150. That the Defendants have continued to commit these acts as part of their everyday course of business because Defendants *in personam* have made the illegitimate enterprise within the legitimate organization big enough to successfully, thus far, attempt to be above the law.

151. That the Plaintiffs are the victims of the Defendants'  violations of the RICO statutes because they conducted these illegal enterprises in order to hide the unlawful debt collection deep within the legitimate business structures in violation of Title 18 U.S.C.A. § 1962(c) (Prohibited activities).

152. That these  funds are commingled with all other legitimate businesses and endeavors, and therefore, the Defendants' entire enterprise is guilty of multiple violations of the money laundering statutes, theft by deception, Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments), and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

153.    That Title 28 U.S.C.A. § 1956 does not compel the victims, or the individual Plaintiffs, to have accurate knowledge of the events and actions which are suspected criminal activities, only that they think they know that these acts have been committed.[49] The Fifth Amendment does not prevent the Government from forcing the production of documents and testimony, and if refused, the Government can force forfeiture of property.

154.    That the intent of Congress was represented by Rep. S. Clay Shaw, Jr. during discussions while preparing the House Judiciary Committee Report H.Rep., 99-855 at 13, and he stated:

> I am sick and tired of watching people sit back and say, 'I am not part of the problem, I am not committing the crime, and, therefore, my hands are clean even though I know the money is dirty I am handling.' The only way we will get at this problem is to let the whole community, the whole population, know they are part of the problem and they could very well be convicted of it if they knowingly take these funds. . .

## XVI.  CONCLUSION

155.    That if the Plaintiffs' beloved pets have been destroyed in violation of these laws, the amount of severe and intentional grief and distress inflicted through extreme negligence upon Samuel K. Jacobs, who is a heart patient, and Nancy M. Heckerman, who is a cancer patient will be immeasurable and irreparable. The immediate stress caused just by the letter dated December 6, 2005, and just received late on December 17, 2005, because it had been misplaced by the mail

---

[49] The intent of Congress as stated in a Senate report, S. Rep. 99-433, at 11, explained:

> [I]n order to fall within the section, the participant need not know that the property involved in the transaction represents the proceeds of "specified unlawful activity." He or she need only know that it represents the proceeds of some form of unlawful activity. This distinction is drawn in order to prevent a defendant from escaping conviction by merely alleging that he or has thought the property involved represented the proceeds of a crime not covered in the term "specified unlawful activity."

company before it could be delivered and answered, is incomprehensibly cruel and life threatening to the Plaintiffs since all of the said Defendants were aware of the Plaintiffs' health conditions and the emotional attachments of the Plaintiffs with their beloved animals who have aided the Plaintiffs in their continuing recoveries from their illnesses.

156. Lawrence Cunnick shall be alleged to operate as the *respondeat superior,* who controls the conspiracy enterprise and this fact is concrete.[50] Consequently, further complaints will be filed in conjunction with Title 18 U.S.C.A. § 1956(c)(7)(F) the following acts or activities constituting an offense involving a Federal health care offense are alleged pursuant to Title 42 U.S.C.A. § 1983 (Civil action for deprivation of rights);, § 1985(3) (Depriving persons of rights or privileges) and Title 28 U.S.C.A. § 1343 (Civil rights and elective franchise), in conjunction with contraventions of RESTATEMENT OF LAW (SECOND), TORTS, and CONFLICT OF LAWS.

157. That Plaintiffs have never received these payoff figures or statements in writing which shows that a bait and switch maneuver was being implemented by the agents COUNTRY KENNELS, INC., BIOCON, INC., Lawernce Cunnick and Pamela Neidermair.[51]

158. That the Plaintiffs conclude that:

---

[50] *Pandick, Inc. v. Rooney,* 632 F.Supp. 1430, 1435-1436 (N.D. 1986) (corporation can conspire with its officers and subsidiaries to violate RICO.)

[51] **RECKLESS NEGLIGENCE**
Malice is not an ingredient that must be established to prove an invasion of privacy. At the same time, negligence is not a defense to an invasion of privacy. Where a defendant alleges the defense of negligence, the defendant may be faced with the same problems that appear in a harassment and abuse case. If the negligence is so reckless and wanton that the creditor should have anticipated the results, or if the creditor knew or should have known that the activity would constitute an invasion of privacy, the courts will state that the reckless negligent act was tantamount to an intentional and willful act *Mason V. Williams Discount Center, Inc.,* 639 S.W.2d 836 (1982). (Posting a list of debtors' names in view of customers stating that the plaintiff was a bad credit risk). *Santiesteban v. Goodyear Tire and Rubber Co.,* 306 F.2d 9 (1962). (Repossessing a set of tires in view of third parties).

a. That this cause of action is not filed pursuant to blasé accusations but is filed with genuine, verifiable and sustainable allegations which can be supported with evidentiary documentation.

b. These Defendants' predicate and overt acts were intended and actual violations of the RICO statutes.

c. There is a definite pattern of racketeering activities by the Defendants over the past fifteen months to the present which demonstrates a continuity that is likely to be continued against the Plaintiffs, and if not against them, then certainly against the Defendants' next victims.

d. There was no offensive pass by the Plaintiffs.

e. There are actual and verifiable Federal constitutional and statute law violations by the Defendants.

f. There are prohibited activities by the Defendants under all four sections of Title 18 U.S.C.A. § 1962.

g. There is a accreditation of the correct venue and process, subject jurisdiction, and personal jurisdiction over all of the Defendants for the filing of this pleading.

h. There are definite irreparable and unsustainable injuries and damages from the actions of the Defendants which have lead the Plaintiffs to this forum which is the only forum where they can appeal for relief from the pattern of racketeering activities perpetrated by the Defendants due to the violation of the United States Code pertaining to the Executive Branch of the United States Government where the Secretary of Agriculture is situated.

## XVII.  COUNTS

### COUNT 1 – UNFAIR  AND  DECEPTIVE  ACTS  AND  PRACTICES

159. That the Plaintiffs incorporate and reallege paragraphs 1 through 158 as if fully set forth herein.

160. That at all times relevant to this complaint, the enterprises of Defendants THE COUNTRY KENNEL, INC., et al, BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers were, and still are, enterprises as defined by Title 18 U.S.C. § 1961 (4) that engage in, and whose activities affect, interstate and foreign trade or commerce or through intrastate commerce.

161. That these unfair or deceptive acts or practices are actionable under such statutes and the regulations, if any, promulgated by the Attorney General pursuant to Title 18 U.S.C. § 1968 (Civil investigative demand). These unfair and deceptive acts occurred primarily and substantially through wire and mail fraud within the State of Maryland and Washington, D.C. in which Defendants conduct their interstate and foreign commerce in violation of Title 18 U.S.C. § 1962 (b) and (c).

162. That upon the direction of Defendant Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh, and Donald R. Rodgers, et al, and their subsidiary enterprises, persons, corporations, and other associates in fact, relatives, attorneys, accountants, not so named in this complaint but to be revealed upon discovery, by the commission of unfair and deceptive acts or practices have caused the Plaintiffs to suffer direct, indirect, and consequential damages, including but not limited to:

    a.   lost business opportunities because of the time taken to meet the various demands of the Defendants and this resulted in extreme mental anguish and physical injuries which have resulted in lost contracts for interstate and foreign commerce;

b.  lost out-of-pocket  expenses for fraudulent and deceptive acts of multiple racketeering  activities;

c.  lost profits from the lack of completion of contracts affecting interstate and foreign commerce; and,

d.  lost good reputation and good will.

WHEREFORE, the Plaintiffs demand that judgment enter against the Defendants THE COUNTRY KENNEL, INC., et al, their enterprises, the  subsidiary enterprises, and all its individual Defendants, ordering:

A.  a finding that the enterprises of Defendants THE COUNTRY KENNEL, INC., et al, their subsidiary enterprises, and the individual Defendants used or employed or ordered unfair and deceptive acts and/or practices in violation of Title 18 U.S.C. § 1962(b) and (c);

B.  an award to the Plaintiffs of punitive damages or monetary damages in treble the amount of their actual damages;

C.  a finding that Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh, and Donald R. Rodgers, their subsidiaries, the individual Defendants not so named who are conducting these affairs, and others not so named in this Complaint, estop them from raising any affirmative defenses to this action; and

D.  such other and further relief as the Court deems proper.

## COUNT 2 - WIRE  FRAUD  AND  FEDERAL RICO

163.  That the Plaintiffs incorporate and reallege paragraphs 1 through 162 as if fully set forth herein.

164. That on at least two or more occasions, Defendants THE COUNTRY KENNEL, INC., et al, and/or their subsidiary enterprises, have continually used the aforesaid intentionally fraudulent and deceptive schemes on the Plaintiff victims, that were designed to:

a. induce the intended victim Plaintiffs into agreements for fraudulent usurious contracts;

b. bait the Plaintiffs into submitting information not for the purpose intended but to the Plaintiffs so that an unfounded and false claim could be generated without substantiation as to Federal laws pertaining to the Consumer Credit and Protection Act and the Fair Credit and Billing Act.

165. That in furtherance of the aforesaid intentionally fraudulent schemes, the Defendant individuals and enterprises of the Defendants THE COUNTRY KENNEL, INC., et al, enterprises made numerous interstate telephone calls and made use of other interstate wire facilities in repeated violations of Title 18 U.S.C. § 1343 (Fraud by wire, radio or television). The use of interstate wire systems included but were not limited to interstate telephone calls inside and from Maryland to the District of Columbia, and to other States not yet known, the purpose of which was to enter into, execute, effectuate, facilitate, and promote the aforesaid frauds and schemes.

166. That each of the aforesaid deliberate and willful acts of misconduct by the Defendants THE COUNTRY KENNEL, INC., et al, through their RICO enterprises constituted violations of Title 18 U.S.C. § 1343 (Fraud by wire, radio or television), and other constituted instances of "racketeering activity" as defined in Title 18 U.S.C. § 1961(1) and § 1956 (c) (7) (D).

167. That the numerous predicate acts of racketeering activity by the Defendant THE COUNTRY KENNEL, INC., et al, their enterprises, their officers, executives and other employees, were interconnected and related, and were part of a pattern of racketeering activities and schemes to defraud the victim Plaintiffs, and perpetrated for the same or other similar purpose, thus constituting a "pattern of racketeering activities" as defined in Title 18 U.S.C. § 1961 (5).

168. That the Defendants THE COUNTRY KENNEL, INC., et al, and other associations in fact, instigated actions for each crime and each set of actions are an "enterprise" as defined in Title 18 U.S.C. § 1961 (4).

169. That through said patterns of racketeering activities:

a. The individual Defendants THE COUNTRY KENNEL, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh, and Donald R. Rodgers, have attempted to collect unlawfully, willfully, and knowingly **received income derived from**, directly and indirectly, a pattern of racketeering activities, and would have invested, directly and indirectly, such income or the proceeds thereof in the promotion and continuation of the RICO enterprises as aforementioned in this complaint in violation of Title 18 U.S.C. § 1962 (a);

b. The individual Defendants Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh, and Donald R. Rodgers, and other individuals, attorneys, and associates in fact not so named as of this filing but to be named later, have acquired and maintained, directly and indirectly, an interest in or **control** of the activities of THE COUNTRY KENNEL, INC., et al, and BIOCON, INC., their enterprises and subsidiary enterprises, in violation of Title 18 U.S.C. § 1962 (b);

c. The individual Defendants Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers, and the other officers, attorneys and employees to be named later, have **conducted and participated**, directly and indirectly, in the conduct of said enterprises' affairs in an attempt to control the Plaintiffs' interstate and foreign commerce in violation of Title 18 U.S.C. § 1962 (c);

d. The individual Defendants Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers, and other relatives, attorneys and associations in fact not so named but who shall be revealed at a later date, **conspired** together at different places and among multiple different enterprises to perform those actions and directions which have been enumerated in paragraphs a-c above in violation of Title 18 U.S.C. § 1962 (d).

170. That the result of the foregoing violations of the law and the patterns of racketeering activities, the receipt and investment from the fraudulent patterns, the acquisition or maintenance of control over the activities of the Defendants' enterprises, the conduct of the affairs of the Defendants' enterprises, is that the Plaintiff victims have been injured in their business and property due to cruel and unusual punishments inflicted, denial of due process of the Law through violations of: Title 7 U.S.C.A. § 2132 'Animal Welfare Act,' Title 7 U.S.C.A. § 2137 'Pet Safety and Protection Act of 2005,' Title 18 U.S.C.A. § 1601, et seq. 'Consumer Credit and Protection Act' and the 'Fair Credit and Billing Act,' and shall be able to recover threefold the damages sustained and the cost of the suit pursuant to Title 18 U.S.C. § 1964 (c). The Plaintiffs' damages include but are not limited to:

a. the loss of business contracts for interstate and foreign commerce;

b.  the loss of business contracts for new joint ventures because of the Defendants' predicate acts;

c.  the loss of profits from the contracts that were never brought to fruition due to Defendants' criminal intent and conspiracy;

d.  the loss of honest services  from fraudulent contract agreements with the Defendants and Defendants' enterprises;

e. the loss of revenue and salaries for the officers from these businesses; and,

f.  the loss of good will and reputation in interstate and foreign commerce.

171.   That Plaintiffs allege that such acts are  the predicate acts which include wire fraud, interference with commerce, and attempting to engage in monetary transactions in property derived from specified unlawful activity which have constituted this pattern of racketeering activity. Plaintiffs allege that they have been continuously injured and will continue to be injured pursuant to  violations of § 1962 (a) by the Defendants THE COUNTRY KENNEL, INC., et al, and their  enterprises and individual unknown Defendants.

WHEREFORE, the Plaintiffs demand that judgment enter against the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers,   their enterprises, as aforementioned:

A.  an award to the Plaintiffs of monetary damages in treble the amount of their actual damages for the violations of these contracts and other interest charges; and,

B.  such other and further relief as the Court deems proper.

COUNT 3- COLLECTION OF UNLAWFUL DEBT  THROUGH  ENTERPRISES

172. That the Plaintiffs incorporate and reallege paragraphs 1 through 171 as if fully set forth herein.

173. That the attempt to collect the unlawful debt was a violation of Title 18 U.S.C.A. § 1961(6).

174. That the Plaintiffs allege that the Defendants plan to conduct an attempt to collect an unfounded award for damages without justification is to attempt the collection of an unlawful debt in violation of Title 18 U.S.C. § 1962 (c) through the interference with interstate and foreign commerce.

175. That each Defendant-enterprise and Defendant-person thus attempted to receive the benefits from the predicate acts of this racketeering scheme according to the facts alleged in violation of Title 18 U.S.C. § 1962 (a).

176. That Plaintiffs allege that these funds were, by liberal inference, attempted to be obtained from the Plaintiffs by transgressing State and foreign boundaries, and, thus, interstate commerce has been affected and will continue to be affected by the attempted illegal collection of these funds through wire fraud in violation of Title 18 U.S.C. § 1343 (Fraud by wire, radio or television).

THEREFORE, the Plaintiffs pray that:

A. an order issue for an investigation for these patterns of racketeering activities from the office of The Secretary of Agriculture pursuant to Title 7 U.S.C.A. § 2146. Administration and enforcement by Secretary and/or The Attorney General of the United States pursuant to Title 18 U.S.C. § 1966;

B.  a finding be issued that this collection of an unlawful debt is a violation of Title 18 U.S.C. § 1962 (c) and § 1962 (a) and that a compensation be ordered for the Plaintiffs for the violation of their Amendment IV Constitutional rights due to the manipulation of the Constitution and the laws of the land enacted pursuant thereof; and,

C.  such other and further relief as the Court deems proper.

### COUNT 4 -COLLECTION OF UNLAWFUL DEBT

177.  That the Plaintiffs incorporate and reallege paragraphs 1 through 176 as if fully set forth herein.

178.  That the  Plaintiffs further allege that the predicate act of denying  the honest services pursuant to a contract agreement was as interference with interstate commerce in violation of the contractual agreement of the Defendants   THE COUNTRY KENNEL, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgerstheir enterprises and the Plaintiffs. By  failing to adhere to their own contractual agreements, the contract was nullified and voided by the Defendants through their  Defendant enterprises.

179.  That the Plaintiffs allege that this scheme or artifice consisted of affirmative misrepresentation or  concealment of terms and conditions of contract in violation of Title 18 U.S.C.  §  1346 (Definition of "scheme of artifice to defraud"). Plaintiffs were deprived the intangible right of honest services through the artifice to defraud by the Defendants   THE COUNTRY KENNEL, INC.,   Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers, their  enterprises, and the unlawful debt that resulted is a violation of Title 18 U.S.C. § 1962 (c).

THEREFORE, the Plaintiffs pray:

A. that the fraudulent contract for the sale of the property be nullified and voided, and all future obligations be negated;

B. . that all other damages be determined at the trial; and

C. such other and further relief as the Court deems proper.

## COUNT 5 - EXTORTION

178. That the Plaintiffs incorporate and reallege paragraphs 1 through 177 as if fully set forth herein.

179. That these predicate acts by telephone pursuant to Title 18 U.S.C. § 1341 (Frauds and swindles) were executed by the Defendants through their enterprises as authorized, Defendants Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers. This demand for the collection of a debt for an extortionate extension of credit in violation of Title 18 U.S.C.A. § 892 (Making extortionate extensions of credit), Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) and Title 18 U.S.C.A. § 894. (Collection of extensions of credit) properly establishes the 'unlawful debt' condition as defined by Title 18 U.S.C. § 1961 (6) because of the misapplication, manipulation, and misrepresentation of the debt in conjunction with violations of Title 18 U.S.C.A. § 1956(c) (F).

180. That this collection of illicit funds results in the persons employed by or associated with said enterprises such as Defendants Lawrence E. Cunnick, and Pamela Neidermair, who, by conducting or participating, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt, have violated Title 18 U.S.C. § 1962 (c) and are also joined equally as respondeat superior.

181.    That Defendants  Michael T. Ebaugh and Donald R. Rodgers, have aided and abetted the Defendants in their pattern of racketeering activities, and have taken control of the enterprises through their professional capacities to complete the predicate and overt acts of RICO violations as initiated by  THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, and Pamela Neidermair,  in violation of Title 18 U.S.C.A. § 1962(b).

182.  That the individual Defendants have conspired together to violate §1962 (b) and (c), and, therefore, have exercised this conspiracy in further violation of Title 18 U.S.C. §1962 (d).

THEREFORE, the Plaintiffs pray:

A. that the damages for these actions be determined by a jury of their peers; and,

B. such other and further relief as the Court deems proper.

## COUNT 6 - DEPRIVATION OF HONEST SERVICES

183.  That the Plaintiffs incorporate and reallege paragraphs 1 through 182 as if fully set forth herein.

184.    That Plaintiffs allege that this scheme or artifice consisted of affirmative misrepresentation or of concealment of terms and conditions of contract in violation of Title 18 U.S.C. § 1346 (Definition of "scheme of artifice to defraud").

185.    That Plaintiffs were deprived the intangible right of honest services through the artifice to defraud by the Defendants and their enterprises who have engaged in the  activities which affect interstate or foreign commerce through a pattern of racketeering activities and the collection of the unlawful debt, have acquired or maintained, directly or indirectly, any interest or control of these enterprises which has resulted in a violation of Title 18 U.S.C. § 1962 (b).

186.  That Plaintiffs were deprived of the intangible right of honest services through the artifice to defraud by the Defendants, legal entities, heirs, attorneys, or associations in fact, who have engaged in the activities which affect interstate or foreign commerce, through a pattern of racketeering activities and the collection of the unlawful debt, and who have conducted or participated, directly or indirectly, in such enterprise's affairs which has resulted in a violation of Title 18 U.S.C. § 1962 (c).

187.  That Plaintiffs allege that the deprivation of these honest services by the conspiracy of these Defendant individuals is a violation of Title 18 U.S.C. § 1962 (d) through the interference with interstate and foreign commerce.

WHEREFORE, Plaintiffs demand that judgment be issued against the Defendants, ordering that:

A. a finding that the contractual agreements have been and are continuing to be breached;

B. a finding be made that said agreements are fraudulent as to content and intention;

C. a finding be made that these Defendants' agreements are intentionally malicious and harmful to the victim Plaintiffs;

D. a finding that the contracts are null and void because of the fraud committed by the Defendant enterprises; and ,

E. a finding be ordered that the Attorney General be notified of these alleged violations in order that proceedings may be instituted to investigate these allegations to estop these actions from continuing against these Plaintiffs, or any future victims, pursuant to Title 18 U.S.C. § 1968 (Civil investigative demand).

F. such other and further relief as the Court deems proper.

## COUNT 7– TITLE 18 U.S.C. § 1962 (b) VIOLATIONS

188. That the Plaintiffs incorporate and reallege paragraphs 1 through 187 as if fully set forth herein.

189. That the Plaintiffs allege that activities as aforementioned are the actions of an organized crime group by association in fact, and, under the guise of a legitimate enterprise the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers et al, are operating RICO enterprises pursuant to these actions. The Defendants, under the direction and control of the RICO enterprises, have infiltrated a legitimate business as members of a crime organization because they have an *interest in* and *control of* the enterprise which affects interstate and foreign commerce in violation of Title 18 U.S.C. § 1962 (b).

190. That the Plaintiffs allege that the intentional, fraudulent, and criminal activities through extortion by the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers who conduct the Defendants' enterprises, along with the violation of the contracts, are the "causes in fact" which directly and indirectly halted the completion of the interstate and foreign commerce of contractual commitments of the Plaintiffs' business due to the amount of time of the representatives (Plaintiffs) spent addressing the continuous problems to retrieve their dogs who are the stolen and kidnapped property, and the Defendants' diversions.

191. That the Plaintiffs allege that the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, with whom the Plaintiffs had dealt

in a professional manner, had the knowledge of the objectives of this situation which increased the amount of criminal activity against the Plaintiffs with the breaches of contract and trust, and with threatened extortion in violation of Title 18 U.S.C. § 1951 (2).

192.    That    the    Defendants    THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers, et al, have enterprises which are secretive, manipulative, and deceptive, and if there are "secret" enterprises within the parent enterprise then Defendants Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers are aware of each enterprise and are each a *respondeat superior*.

WHEREFORE, Plaintiffs pray that a finding issue from the Court that:

A. the Defendants and the Defendants' enterprises, named and not named in this complaint who are part of this conspiracy, who used or employed or ordered the unfair and deceptive acts in violation of Title 18 U.S.C. § 1951 (a) and (b)(1) and § 1962 (b), be ordered to cease and desist their criminal actions; and,

B. such other and further relief as the Court deems proper.

COUNT 8 – PROTECTION OF DOCUMENTS

193.    That the Plaintiffs incorporate and reallege paragraphs 1 through 192 as if fully set forth herein.

194.    That upon information or belief, the Defendants in this action have in their possession "documentary material" as defined pursuant to Title 18 U.S.C. § 1961 (9) which includes documents, notes on conferences and meetings, bank notes and mortgages, and other materials that state or ascribe to the matters present in the Plaintiffs' complaint.

195.  That these said "documentary materials" may contain declarations or statements that give credence to the Plaintiffs' claims in this complaint. Some or all of the "documentary material" may be destroyed or disposed of in the normal scheduled procedure of the Defendants' business, or otherwise be erased, destroyed, removed, or otherwise obliterated.

196.  That if any of this "documentary material" is destroyed, misplaced or lost during this litigation, the Plaintiffs would be deprived of material evidence in support of their claims; and the Plaintiffs' ability to investigate and to prepare their case in subsequent Court events would be severely prejudiced and hampered.

197.  That Plaintiffs are permitted and entitled pursuant to **Fed. R. Civ. Pro. 26 (a)** to pursue these avenues of inquiry and demand the production of these "documentary materials," and Plaintiffs would be prejudiced if this statute law was violated by the Defendants.

198.  That the Plaintiffs have no adequate remedy at law to pursue this "documentary material" and other evidence except through this court.

199.  That the Defendants will not be and cannot be prejudiced by the demand to preserve these documents, wire recordings, and other evidences.

WHEREFORE,  Plaintiffs pray for relief pursuant to the following:

A. demand that these documents aforementioned in their possession be maintained by the Defendants for the duration and pendency of this action;

B.  that the term "document material" be construed as it is defined by Title 18 U.S.C. § 1961 (9);

C. that all "documentary material"  be maintained and preserved in its proper containment in its original location at all times, and that said "documentary material" be

available for inspection by Plaintiffs or Plaintiffs' representatives during regular business hours, by reasonable notice, at all times; and,

D. that such other further relief be granted as the Court deems appropriate.

## COUNT 9 – AIDERS AND ABETTORS

200. That the Plaintiffs incorporate and reallege paragraphs 1 through 199 as if fully set forth herein.

201. That the Plaintiffs allege that the Defendant individuals, Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers agreed to participate and commit the predicate acts in violation of Title 18 U.S.C. § 1962 (a) (b) and (c) through the Defendants' enterprises. Plaintiffs further allege that the agreement to participate in the predicate acts of the racketeering activities implicated the Defendant individuals as aiders and abettors of the continued pattern of racketeering activities of the Defendant enterprise in violation of Title 18 U.S.C. § 2 and § 1962 (a).

202. That the Plaintiffs allege that the injury to their business was directly instigated and developed by the Defendant individuals through the pattern of racketeering activities pursuant to the policies and functions of the Defendant enterprises in violation of Title 18 U.S.C. § 1962 (a).

WHEREFORE, Plaintiffs pray:

A. that the damages for these actions be determined by a jury of their peers; and

B. such other and further relief as the Court deems proper.

## COUNT 10—RESPONDEAT SUPERIORS AND THEIR AIDERS AND ABETTORS

203. That the Plaintiffs incorporate and reallege paragraphs 1 through 202 as if fully set forth herein.

204. That Plaintiffs allege that Defendants Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgersis each a *respondeat superior* and individuals who are responsible, directly and indirectly, for the actions of the lower–rung individuals who committed these continuous criminal actions in the pattern of RICO activities. The relationship is continuous and interrelated between the families, associates in fact, legal entities, attorneys, and outsiders in their control and direction of the actions of the lower echelon in violation of Title 18 U.S.C. § 1962 (c) and (d).

205. That the upper level Defendants need the lower level enterprises to carry out their orders, and the lower level enterprises do not continue to be employed once these orders and directions are fulfilled. The Defendants' enterprise benefits from the actions of all of these individual actors whether the actions be legitimate or otherwise in violation of Title 18 U.S.C. § 1962 (c) and (d).

206. That the Plaintiffs allege that the contract employees of the Defendant enterprises, directly and indirectly, conspired to promote, encourage and endorse these bogus racketeering activities of the Defendant THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers and are also equally at fault for the racketeering activities that have precluded this complaint in violation of Title 18 U.S.C. § 1962 (c) and (d).

207. That the Plaintiffs allege that any other outside professionals who have aided the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers, et al, through their enterprises in conspiring to commit these crimes by instructing the individuals of contract employees of the

various Defendants' enterprises as how to execute and continue these criminal actions are equally responsible for the RICO violations pursuant to §1962 (c) and (d).

WHEREFORE, Plaintiffs pray that:

A. all other individuals not so named in this complaint, responsible for conspiring to further the policies and functions that are dictated by the actions of the Defendants, et al, heirs, relatives, associates in fact, attorneys, and other coconspirators, directly and indirectly, be revealed by the Defendants;

B. that these executives, as *respondeat superior* Defendants, should not and cannot be shielded from accusations of criminal conduct;

C. that each and every Defendant, either named or to be named during discovery, is financially and criminally responsible for the patterns of racketeering activities for which they have been paid, directly and indirectly, to promote, protect, instigate, and continue these criminal acts for the benefit of the Defendants' enterprises and these Defendant individuals which have lead to this complaint; and,

D. such other and further relief as the Court deems proper.

<u>COUNT 11 – DISCOVERY</u>

208.   The Plaintiffs incorporate and reallege paragraphs 1 through 207 as if fully set forth herein.

209.   That Plaintiffs allege that the information concerning continuing RICO activities which affect the Plaintiffs' business, and other possible victims, is only in the exclusive control of the attorneys of which can only be revealed by the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and

Donald R. Rodgers through discovery pursuant to FRCvP Rule 26. These averments do comply with FRCvP Rule 9 (b) pursuant to *Michaels Building Co. v. Ameritrust Co.,* N.A. 848 F.2d 674 (6th Cir.1988), which avers that dismissal would mean that "corporate entities who jealously guard the names of their clients, as they should, would be forever victorious."

210.    That Plaintiffs allege that since they lack direct access during this time concerning the telephone calls of the Defendants and their coconspirators to each other and various private businesses, and since this is the initial pleading stage, Rule 9(b) decisions permit the civil RICO claim to allege only the dates and times as substantiated by the telephone company records concerning these calls. Greater accuracy can be obtained only after detailed discovery is obtained through subpoena concerning the accounts.

211.    That Plaintiffs allege that the telephone records on the dates requested by subpoena will prove that the predicate acts so detailed in this petition had to have used wire fraud to achieve the conspiratorial goals of the persons involved in the racketeering activities.

212.    That Plaintiffs demand that pursuant to FRCvP Rule 26(a) (1) and (2), all information pertaining to the allegations as stated in this complaint be submitted to this Honorable Court by persons employed by the Defendant enterprises or any persons indirectly or directly connected with these enterprises. Any other outside sources which are alleged in this complaint may be 'associates in fact' of the alleged RICO enterprises.

WHEREFORE, plaintiffs pray:

A. that the Defendants and Defendants' enterprises so named in this complaint comply with the production of all "documentary materials" aforementioned be produced as requested by these plaintiffs pursuant to Federal Rules of Civil Procedure Rule 26.; and,

B.   that the information concerning the insurance programs of the Defendants, the Defendants' enterprises, the associates in fact, or attorneys, be submitted for review pursuant to Federal Rules of Civil Procedure Rule 26.

## XVII.  PRAYER FOR RELIEF

WHEREFORE, that because of the Defendants' malicious, unlawful and reckless violation of Plaintiffs' right to privacy, and because of Defendants' malicious, unlawful and reckless disregard of Plaintiffs' right to work which has been obstructed by fraudulent claims of felonious debts, punitive and exemplary damages should be assessed against Defendants, to-wit:

That as a proximate result of Defendants' acts as herein set forth the Plaintiffs have been damaged in the sum of over $2,000,000.

That the conduct of the Defendants, and other associates in fact, have been willful, deliberate and malicious and Plaintiffs demand from the Defendants, their associates in fact, and agents, and each of them, exemplary damages  in the sum of $50,000.00 per person.

WHEREFORE Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Defendants as follows:

1.   That Counts 1 through 5, 7, and 8 granting compensatory damages in an amount to be proven at trial but at least $2,000,000.00 dollars plus all trial costs, and trebling such damages pursuant to Title 18 U.S.C. § 1964 (c);

2.   That on each of the other Counts not so enumerated, granting damages in an amount to be determined at trial;

3. That Counts 9 through 11 granting compensatory damages in an amount to be proven at trial but at least $350,000.00 plus all trial costs, and trebling such damages pursuant to Title 18 U.S.C. § 1964 (Civil remedies) (c);

4. That all costs for the time lost in the last fifteen months which events have lead to the disruption, failure, and stoppage of the interstate and foreign commerce of the Plaintiffs' business, be granted pursuant to Count 6 in the amount of $1,000,000.00;

5. That an award be granted to the Plaintiffs of reasonable fees for their time as 'private attorneys general' for loss of revenue in access of $100,000.00, and all costs for the preparation of this complaint;

6. That a finding that the Defendants THE COUNTRY KENNEL, INC., et al, their enterprises, their subsidiary enterprises, the individual not so named in this complaint, estop them from raising any affirmative defenses to this action;

7. That the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers et al, Defendants' enterprises, subsidiary enterprises, and individual Defendants, known and unknown, should for the sake of public policy and to prevent further violations of the law, have orders issued "*imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce*" pursuant to Title 18 U.S.C. § 1964(a) (Civil remedies);

8. That Defendants be directed to submit all evidence, documents, publications, contracts, and other communications in their possession to the Plaintiffs, or their attorney, as

alleged in this complaint by the Plaintiffs pursuant to the Federal Rules of Civil Procedure Rule 26;

9. That the Court direct any further actions and orders against the Defendants as it may deem appropriate, but not known to the Plaintiffs as of filing of this complaint, pursuant to Title 28 U.S.C. § 1651 (Writs), and § 1361 (Action to compel an officer of the United States to perform his duty);

10. That the Plaintiffs will obtain relief only if the sentencing and fines for the Defendants THE COUNTRY KENNEL, INC., BIOCON, INC., Lawrence E. Cunnick, Pamela Neidermair, Michael T. Ebaugh and Donald R. Rodgers, et al, are significant, the restrictions for future business operations and procedures are ordered to conform to the laws of the United States, and only if the damages awarded to the Plaintiffs are substantial enough to inhibit and deter the Defendants from continuing in the criminal pattern of racketeering activities; and,

11. Such other and further relief as the Court deems proper.

12. Plaintiffs preserve the right to amend this complaint upon information and evidence to be obtained which will affect the outcome of this litigation upon approval of the Court after responsive pleadings have been filed.

## XIX. TRIAL BY JURY

Plaintiffs demand a trial by jury pursuant to Amendment VII of the Constitution of the United States and Federal Rules of Civil Procedure Rule 38 (b). Also, Title 28 U.S.C.A. § 2072 (Rules of procedure and evidence; power to prescribe) COMMENTARY ON 1988 AND 1990 REVISIONS—'Federal Rule—Making Procedure Altered'—Paragraph 3: ". . .*Also in that paragraph was the direction that the rules not impair the right to trial by jury guaranteed by the*

*Seventh Amendment.* ***That direction is omitted, but without moment: no reminder is needed that neither a rule nor a statute can upset a constitutional requirement.***"

Right to trial by jury in a civil RICO case exists because the Supreme Court of the United States has long upheld this right pursuant to the antitrust laws and precedents which carry such a right. *Fleitman v. Welsbach St. Lighting Co.,* 240 U.S. 27 (1916 ) (Holmes, J.). The right to trial by jury is derived from § 1964 (c).

Dated this 12th day of January, 2005.

Respectfully submitted,

Samuel K. Jacobs

Nancy M. Heckerman

OFFICE OF SAMUEL K. JACOBS
2300 M Street NW
Suite 800
Washington, D.C. 20037
Telephone: 202-416-1753
Messages: 240-505-1603
E-Mail: sjnhjacobs@msn.com
Fax: 202-293-3083



Mr. Sam Jacobs & Mrs. Nancy Jacobs
267 Kentlands Blvd. #300
Gaithersburg, MD 20878

June 13, 2005

RE: Kennel Stays of Max, Chrissy, Jake, Maggie, Molly, Charlie, and Alex

Dear Mr. & Mrs. Jacobs,

This letter is to notify you that as of June 30, 2005 your bill in the sum of $18,000.00 must be paid in full. This total is **not negotiable**. As per the Maryland Abandoned Animal Law, if your bill is not paid in full all dogs become the property of the Country Kennel Inc. At this time we may do what we feel is necessary for the well-being of the animals in question. We have enclosed a copy of the Maryland Abandoned Animal Law so that you may be aware of both parties' rights regarding this situation. You must take **immediate** action, as this is your **only** notice.

Sincerely,

*Pamela Niedermair*

Pamela Niedermair

Manager of the Country Kennel Inc.

06 0062

FILED

JAN 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT


EXHIBIT A

**The Country Kennel, Inc.**




15801 Crabbs Branch Way • Rockville, MD 20855-2635



Mr. Sam & Mrs. Nancy Jacobs
267 Kentlands Blvd. #300
Gaithersburg, MD 20878

December 6, 2005

Dear Mr. & Mrs. Jacobs,

The Country Kennel is currently in its busy season with the winter holidays. Your total outstanding balance as of November 30, 2005 is $18,720.00. We will need full payment of your existing balance paid in full by December 15, 2005 to continue boarding your dogs Alex, Charlie, Christianne, Jake, Maggie, Max, and Mollie. If this requirement is not met, the dogs become the property of The Country Kennel. We appreciate your continued cooperation in the fulfillment of this obligation.

Sincerely,

Pamela Niedermair

Pamela Niedermair
The Country Kennel Manager

**The Country Kennel, Inc.**

15601 Crabbs Branch Way • Rockville, MD 20855-2635

EXHIBIT A



06 0062

# FILED

JAN 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



SANDY SPRING

44591941

23-9/1000

REMITTER: SAMUEL K. JACOBS

PAY TO THE
ORDER OF    ***    COUNTRY KENNELS

**Eight Thousand Dollars and Zero Cents**

DATE  July 20, 2005

$ 8,000.00

DOLLARS

**EXHIBIT B**



06 0062

FILED

JAN 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT


EXHIBIT C

HIGH VALUES
987 KENTLANDS BLVD, #000
GAITHERSBURG, MD 20878

1776

Date 6·30·05

Pay to the
Order of  Country Kennels                    $ 2000.00

Two Thousand and no/100                       Dollars

SANDY    17001 OSCEOLA AVE., OLNEY, MD 20832
SPRING   www.sandyspringbank.com
         Experience The Difference

For  payment on acount

⑆055001096⑆    143113010⑈  ⑈1776



EXHIBIT C

**OWNER'S RECEIPT**                                                    Control #:  **71925**

Pet: **Alex**
Owner: **Jacobs, Sam\Nancy**
Addr: **13620 Canal Vesta Ct**
    **Potomac, MD 20854**
Phone: **301-417-7241**

Date: **1/3/2005**
Arrived: **1/3/2005**  @  **5:20 PM**
Depart: **1/3/2005**  @  **5:20 PM**

At: **MA**

| --- Boarding --- | | --- Grooming --- | | --- Retail --- | |
|---|---|---|---|---|---|
| 1 days @ 400.00 | 400.00 | Complete Groom | 0.00 | | 0.00 |
| Training | 0.00 | Bath & Brush | 0.00 | | 0.00 |
| Exercise | 0.00 | Nailtrim/paint | 0.00 | | 0.00 |
| Medication | 0.00 | Med/flea Shampo | 0.00 | | 0.00 |
| Training | 0.00 | Flea Dip | 0.00 | | 0.00 |
| Afterhour Charg | 0.00 | Dematting | 0.00 | | 0.00 |
| Special Diets | 0.00 | Comb-Out | 0.00 | | 0.00 |
| | 0.00 | Gr.coupons | 0.00 | | 0.00 |
| 2 in 1 Discount | 0.00 | Shed-X | 0.00 | | 0.00 |
| | 0.00 | | 0.00 | | 0.00 |

THE COUNTRY KENNEL, INC.
5718 Ridge Road
Mt. Airy, Maryland 21771
(410) 795-5544 or (301) 831-7766

The Country Kennel of Mt. Airy
For all your Boarding and Grooming Needs

| | |
|---|---|
| Subtotal: | $400.00 |
| Sales Tax: | 0.00 |
| Total: | $400.00 |
| Deposit: | 0.00 |
| Visa/MC: | $400.00 |

*Balance 1000.00*
*paid $400.00*
*600.00 Balance*

**EXHIBIT C**



**SHULMAN ROGERS GANDAL PORDY & ECKER, P.A.**

| | | | | |
|---|---|---|---|---|
| Lawrence A. Shulman | Washington H. Talcott, Jr.+ | Michael J. Froehlich | Eric J. von Vorys | John D. Adams |
| Donald R. Rogers | Fred S. Sommer | William C. Davis, III | Gary I. Horowitz | Michael T. Ebaugh |
| Karl L. Ecker+ | Morton A. Faller | Patrick M. Martyn | Heather L. Howard | David B. Kramer |
| David A. Pordy+ | Alan S. Tilles | Sandy David Baron | Stephen A. Metz | Louise J. Pair |
| David D. Freishtat | James M. Hoffman | Christine M. Sorge | Hong Suk "Paul" Chung | *Of Counsel* |
| Martin P. Schaffer | Michael V. Nakamura | Michael L. Krsak | Patrick J. Howley | Larry N. Gandal |
| Christopher C. Roberts | Jay M. Eisenberg+ | Jeffrey W. Rubin | Carmen J. Morgan+ | Leonard R. Goldstein |
| Jeffrey A. Shane | Douglas K. Hirsch | Simon M. Nadler | Kristin E. Draper+ | Richard B. Meyer+ |
| Edward M. Hanson, Jr. | Ross D. Cooper | Scott D. Museles | Heather L. Spurrier+ | Larry A. Gordon+ |
| David M. Kochanski | Glenn C. Etelson | Kari W. Moore | André L. Brady | David E. Weisman |
| James M. Kefauver † | Karl J. Protil, Jr.+ | Michelle R. Curtis+ | Melissa G. Bernstein | Lawrence Eisenberg |
| Robert B. Canter | Timothy Dugan+ | Mimi L. Magyar | Patricia Teck | Deborah L. Moran |
| Daniel S. Krakower | Kim Viti Fiorentino | Glenn W.D. Golding+ | Jacob A. Ginsberg | Scott D. Field |
| Kevin P. Kennedy | Sean P. Sherman+ | Michael J. Lichtenstein | John D. Sadler | Jeannie Eun Cho |
| Alan B. Sternstein | Gregory D. Grant+ | Bruce A. Henoch | Marc E. Puseloff | *Special Counsel* |
| Nancy P. Regelin | Jacob S. Frenkel+ | Jeremy W. Schulman | Erin J. Ashbery | Philip R. Hochberg+ |
| Samuel M. Spiritos+ | Rebecca Oshourny | Debra S. Friedman+ | Alexis H. Peters+ | *Maryland and D.C. except as noted* |
| Martin Levine | | Matthew M. Moore+ | Meredith S. Abrams | + Virginia also  • D.C. only |
| | | | | • Maryland only  † Retired |

Writer's Direct Dial Number:

301-255-0536
mebaugh@srgpe.com

January 5, 2006

**VIA FEDERAL EXPRESS**

Offices of Samuel K. Jacobs
2300 M Street, NW,
Suite 800
Washington, D.C. 20037

**06 0062**

Attn: Mr. Samuel K. Jacobs and Mrs. Nancy M. Heckerman

Re:   Notice Regarding Delivery of Alex, Charlie, Christianne, Jake, Maggie, Max
and Mollie.

Our File No:   108257

**FILED**

JAN 13 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Dear Mr. Jacobs and Mrs. Heckerman:

This office has been retained by The Country Kennel, Inc. ("Country Kennel") to arrange for the delivery to you of Alex, Charlie, Christianne, Jake, Maggie, Max and Mollie (collectively, the "Dogs"). Pursuant to your request, Country Kennel has provided boarding services and cared for the Dogs since you placed them in Country Kennel's care and custody on October 11, 2004.

As you are aware, there remains a dispute regarding the outstanding balance for the services Country Kennel has provided to date. Country Kennel has repeatedly requested that you retrieve the Dogs in order to prevent the accrual of additional charges. Despite these requests, you have failed to reclaim possession of the Dogs. In order to prevent the accumulation of additional charges for these services, Country Kennel does hereby provide you with formal notice, pursuant to Section 16-701 of the Commercial Law Article of the Maryland Annotated Code, that the Dogs are ready for immediate delivery to you.



**SHULMAN
ROGERS
GANDAL,
PORDY &
ECKER, P.A.**

Country Kennel hereby demands that you make arrangements to retrieve the Dogs as soon as reasonably practicable. If you fail to claim the Dogs within ten (10) days of the date of this notice Country Kennel will treat the Dogs as having been abandoned and proceed in accordance with Section 16-701 of the Commercial Law Article of the Maryland Annotated Code to (a) sell the Dogs at public sale, except for purposes of experimentation or vivisection; (b) turn the Dogs over to an animal welfare agency serving Montgomery County; or (c) turn the Dogs over to a responsible private individual in the county.

NEITHER THIS NOTICE, NOR COUNTRY KENNEL'S DELIVERY OF THE DOGS IN ACCORDANCE HEREWITH SHALL BE CONSTRUED AS A WAIVER OF ANY OF COUNTRY KENNEL'S RIGHTS, WHETHER AT LAW OR IN EQUITY.

Should you have any questions, please do not hesitate to communicate them to the undersigned at (301) 255-0536.

Sincerely yours,
SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

Michael T. Ebaugh

Enclosure
Cc:   Lawrence E. Cunnick
       Don Rogers, Esq.
G:\134\Clients\Country Kennel, Inc\Jacobs Letter.01.05.06.doc

**EXHIBIT D**